UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
WYETH, et al.                       :
                                    :
          Plaintiffs,               :
     v.                             :   Civil Action No. 08-230 (JAP)
                                    :
ABBOTT LABORATORIES, et al.         :
                                    :   **OPINION**
                                    :
          Defendants.               :
_____ :

PISANO, District Judge.

Defendants Boston Scientific Corporation and Boston Scientific Scimed, Inc. (together "BSC") appeal pursuant to Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1(c)(1) from the December 1, 2009 Letter Order of the Magistrate Judge disqualifying Howrey LLP ("Howrey") as counsel for BSC in this matter.[1]  The Court heard oral argument on December 29, 2009.  For the reasons below, the decision of the Magistrate Judge is reversed, and Howrey shall be permitted to continue as counsel for BSC.

I.    Background

This is a patent infringement action brought by plaintiffs Wyeth and Cordis Corporation against defendants BSC and Abbott Laboratories.  BSC is presently represented in this action by the law firm Howrey LLP ("Howrey"), which entered the case on behalf of BSC in or about April 2009, when it was substituted for Kenyon & Kenyon LLP, the law firm

---

[1]That Order has been stayed pending this appeal.

that had initially appeared on behalf of BSC in this case.

Shortly after Howrey's lawyers were admitted *pro hac vice* in this matter, Wyeth sought leave from Magistrate Judge Bongiovanni to file a motion to disqualify Howrey. Wyeth alleged that Howrey's representation of BSC constituted a violation of Rule of Professional Conduct ("RPC") 1.7, which prohibits a lawyer from representing a client, where, among other things, "the representation of [that] client will be directly adverse to another client." RPC 1.7(a)(1). According to Wyeth, Howrey is representing Wyeth in an ongoing patent matter in Europe (the "Lonza matter"),[2] and because Wyeth and BSC are adverse in the instant case, Howrey should be disqualified from representing BSC in this action.

About the same the time Howrey entered the present case on behalf of BSC, Howrey also entered its appearance for BSC in a similar case that was pending before District Judge Robinson in the District of Delaware. In that case -- a declaratory judgment patent action related to the instant case that has since concluded[3] -- BSC was the plaintiff and Wyeth a defendant. Howrey attorneys were granted *pro hac vice* admission on behalf of BSC in that case, and immediately thereafter, on April 30, 2009, Wyeth filed a motion before Judge Robinson to disqualify Howrey from representing BSC based upon the alleged violation of

---

[2]In the Lonza matter, Howrey represents a Wyeth entity opposing a European patent owned by Lonza Biologics, PLC in the European patent office.

[3]The Delaware matter is captioned *Boston Scientific Corporation, et al., v. Johnson & Johnson, Inc., et al.*, Civil Action No. 07-333 (consolidated case). That matter concluded with summary judgment being entered in favor of BSC.

RPC 1.7.[4]

In light of the pending motion in the District of Delaware, by Order dated May 12, 2009, Judge Bongiovanni deferred addressing the disqualification issue in the present case until after the Delaware motion was decided. *See* Order at Docket Entry # 54. Judge Bongiovanni's May 12th Order instructed the parties, upon receipt of a ruling on the Delaware motion, to submit a letter to this Court seeking relief if either party believed that the ruling from Delaware did not resolve the disqualification issue in the instant case. *Id.*

Judge Robinson held a full evidentiary hearing on the disqualification motion.[5] On August 25, 2009, Judge Robinson issued a memorandum opinion in which she found that although Howrey's representation of BSC violated RPC 1.7, disqualification "was not the appropriate remedy under the circumstances" based upon Delaware law. *See Boston Scientific Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369, 374 (D. Del. 2009). Finding that the two matters at issue -- *i.e.*, the Lonza matter in Europe and the patent action in Delaware -- were unrelated, were being handled out of offices in different countries, and were separated within the Howrey firm by an ethical wall, Judge Robinson determined that it was not necessary to disqualify Howrey from representing BSC in the Delaware action. *Id.* Furthermore, Judge Robinson found that Howrey's violation of RPC 1.7 was in large part due to Wyeth's conduct, which the court found created "significant confusion for Howrey" as to which Wyeth entity or entities Howrey was actually representing in the Lonza matter. *Id.* In

---

[4]In the District of Delaware, attorney conduct is governed by the American Bar Association's Model Rules for Professional Conduct. D. Del. Local Rule 83.6.

[5]The parties here have stipulated to the evidence received in the Delaware proceeding.

denying Wyeth's motion, the court noted that "Wyeth should not now benefit from such obfuscatory conduct." *Id.*

By letter dated September 2, 2009, Wyeth wrote to Judge Bongiovanni asking that the Court decline to follow Judge Robinson's decision and instead disqualify Howrey as a result of the violation of RPC 1.7. In the December 1 Letter Order, Magistrate Judge Bongiovanni adopted the factual findings of Judge Robinson and concurred with the Delaware court's conclusion that Howrey's representation of BSC in this case constituted a violation of RPC 1.7. However, Judge Bongiovanni granted Wyeth's motion and disqualified Howrey, interpreting applicable case law as requiring mandatory disqualification for a violation of RPC 1.7. This appeal followed.

II.  Analysis

A.  Standard of Review

Pursuant to Local Civil Rule 72.1(c), a decision of a magistrate judge with respect to a non-dispositive matter may be set aside when the ruling is "found to be clearly erroneous or contrary to law." R. 72.1(c)(1)(A). "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004)(quoting *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J.1990). A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. *Singer Management Consultants, Inc. v. Milgram*, 608 F.Supp.2d 607, 611-12 (D.N.J. 2009).

B. <u>Whether the Magistrate Judge's Decision was Clearly Erroneous or Contrary to Law</u>

In this District, questions of attorney ethics are governed by Local Civil Rule 103.1(a), which provides that the conduct of attorneys admitted before this Court shall be governed by the Rules of Professional Conduct of the American Bar Association as modified by the New Jersey Supreme Court. *FMC Corp. v. Guthery*, 2009 U.S. Dist. LEXIS 14609 (D.N.J. February 24, 2009); *see also Carlyle Towers Condo. Ass'n v. Crossman Sav.*, 944 F.Supp. 341, 345 (D.N.J. 1996). Typically, when interpreting the Rule of Professional Conduct, courts "look[] to New Jersey's state courts' interpretations of them as primary authority and modifies that interpretation when required or permitted by federal law." *Guthery,* 2009 U.S. Dist. LEXIS 14609 at *5.

As noted earlier, the instant dispute arises under Rule of Professional Conduct 1.7. That rule provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.
> 
> A concurrent conflict of interest exists if:
> 
> (1) the representation of one client will be directly adverse to another client; or
> 
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> 
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> 
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> 
> (2) the representation is not prohibited by law;

> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

RPC 1.7.

There is no dispute that BSC, a defendant in this case, and Wyeth, a plaintiff, are adverse in this matter. Thus, the threshold issue for the Magistrate Judge with respect to whether there was a violation of RPC 1.7 was whether Wyeth was, as it claimed, a current client of Howrey. In addressing this question in the District of Delaware, Judge Robinson noted that Wyeth is a global pharmaceutical company with multiple divisions and subsidiaries, a "family of companies" for whom Howrey has handled several matters. Delaware Opinion at 2-3. Although Judge Robinson found that several factors -- including Wyeth's naming conventions, its use of the same in-house attorneys on matter involving different subsidiaries, and the willingness of it and its subsidiaries to receive billing invoices on matters on which they were not directly engaged with Howrey -- caused confusion at Howrey as to exactly which Wyeth entity Howrey was representing in the Lonza matter, Judge Robinson ultimately concluded that a current attorney-client relationship exists between Wyeth and Howrey with respect to the Lonza matter. *Id.* at 8. As such, Judge Robinson found that Howrey's representation of BSC adverse to Wyeth in the Delaware case was a violation of RPC 1.7. *Id.*

Judge Bongiovanni concurred with and adopted the finding of Judge Robinson that a current attorney-client relationship exists between Howrey and Wyeth, as well as the

conclusion that Howrey's representation in the instant action constitutes a violation of RPC 1.7.  Letter Order at 2.  These findings are not challenged on this appeal.  However, Judge Bongiovanni, citing *In re Cendant Corp. Securities Litigation*, 124 F. Supp 2d 235 (D.N.J. 2000) and *Celgene Corp. v. KV Pharmaceutical Corp.*, 2008 WL 2937415 (D.N.J. July 29, 2008), applied what appeared to her to be a mandatory disqualification rule, and granted Wyeth's motion to disqualify the Howrey firm, finding that "[g]iven the violation of Rule 1.7, . . . disqualification is appropriate here." *Id.*  On this appeal, BSC contends that the Magistrate Judge erred in applying a *per se* disqualification rule, or, said another way, erred in concluding that a violation of RPC 1.7 automatically requires disqualification.  Rather, BSC argues that a court is required to carefully consider the facts of each case individually and balance the appropriate factors in order to determine whether disqualification is warranted.  Because the Magistrate Judge failed to engage in this factual analysis and balancing, BSC asserts that the decision disqualifying Howrey constitutes clear error.

      The Court of Appeals for the Third Circuit has noted that "[a]lthough disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic." *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).  The question of whether disqualification is appropriate is committed to the sound discretion of the district court, which "means that the court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Id.*  Indeed, as other courts in this district have stated, "[m]otions to disqualify are viewed with 'disfavor' and disqualification is

considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary." *Carlyle Towers*, 944 F. Supp. at 345 (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099 1114 (D.N.J. 1993).

"Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts." *Carlyle Towers*, 944 F. Supp. at 345 (*quoting Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121, 1124 (N.D. Ohio 1990)).  "Because disqualification during pending litigation is an extreme measure, courts must closely scrutinize the facts of each case to avoid injustice."  *In re Cendant Corp. Securities Litigation*, 124 F. Supp 2d at 249.  In ruling on such a motion, courts should "consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Miller,* 624 F.2d at 1201.  Notably, "ethical rules should not be blindly applied without consideration of the relative hardships." *Carlyle Towers*, 944 F. Supp. at 345 (quoting *Gould*, 738 F. Supp at 1124); *see also Celgene Corp.*, 124 F. Supp. 2d at 249 ("courts must closely scrutinize the facts . . . [and] balance the hardships to the client whose lawyer is sought to be disqualified against potential harm to the adversary should the attorney be permitted to proceed.").

Although some courts have advocated a mandatory disqualification rule, *see  Manoir-Electroalloys Corp. v. Amalloy Corp*, 711 F. Supp. 188, 195 (D.N.J. 1989) (disqualification should be mandatory for violation of RPC 1.7), a more modern approach is for courts, when faced with a conflict problem, to carefully examine the totality of the circumstances, taking a

balanced approach that includes evaluating the impact, nature and degree of a conflict, *see, e.g.*, *Boston Scientific Corp.*, 647 F. Supp. 2d at 374; *Elonex I.P. Holdings, Ltd. v. Apple Computer*, 142 F. Supp. 2d 579, 583-584 (D. Del. 2001) (balancing factors to find disqualification unwarranted); *University of Rochester v. G.D. Searle & Co., Inc.*, 2000 WL 1922271 (W.D.N.Y. Dec. 11, 2000) (requiring moving party to "come forward with facts tending to show that [the concurrent representation] has tainted the trial by affecting counsel's presentation of the case, by placing counsel in a position to use privileged information, or by otherwise allowing counsel to gain an unfair advantage"). Modern litigation, like the instant patent case, often involves multinational companies and multinational law firms among whom conflicts occasionally arise due to the broad reach of their respective businesses. Further, patent cases are more likely to involve intensely complex, specialized issues that require experienced, knowledgeable counsel, and mandatory disqualification may work prejudice to a party by depriving it of its counsel of choice. As such, mandatory disqualification may serve to encourage the use of disqualification motions solely for tactical reasons -- a use courts have repeatedly expressed concerns about. *See, e.g., In re Congoleum Corp.*, 426 F.3d 675, 686 (3d Cir. 2005) (noting the existence of "concerns about the tactical use of disqualification motions to harass opposing counsel.") (citing *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (expressing the same concern and referring to this practice as a "dangerous game." ). Moving away from a mandatory disqualification rule is in no way intended undermine the purposes of the Rules of Professional Conduct (and in this case RPC 1.7), but rather, it allows courts to fashion more equitable solutions to a

conflict problem while still maintaining the high ethical standards of the profession.

Here, the Court finds that the Magistrate Judge, by applying an automatic disqualification rule, failed to undertake the necessary factual analysis and weigh the relevant factors before disqualifying Howrey from representing BSC in this case. As such, the decision is erroneous and shall be set aside.

C.      Whether Disqualification of Howrey is Warranted

For the purposes of this appeal, BSC accepts Judge Robinson's factual finding that an attorney-client relationship currently exists between Wyeth and Howrey with respect to the Lonza matter. BSC Brf. at 1 n.2. There is no dispute, therefore, as Judge Robinson's found, that Howrey's representation of BSC in this case violates RPC 1.7. Consequently, the only issue that this Court must determine is whether, under the specific facts of this case, Howrey should be disqualified from this matter as a consequence of this violation.

When presented with a motion to disqualify counsel, a court must strike a "delicate balance" between the competing considerations. *Pioneer-Standard Electronics, Inc. v. Cap Gemini America, Inc.*, 2002 WL 553460 (N.D. Ohio 2002). On the one hand, the Court must examine the potential hardships that one party will experience if his lawyer is disqualified. On the other, the Court must weigh the potential hardships to the adversary if counsel is permitted to proceed. *In re Cendant Corp. Securities Litigation*, 124 F. Supp 2d at 249. Further, while weighing these considerations, a Court must also be mindful of the ends served by the ethics rules and the need "to maintain the highest standards of the [legal] profession." *In re Cendant Corp. Securities Litigation*, 124 F. Supp 2d at 249. Courts have an obligation

to maintain the these professional standards, "promot[e] public confidence in the integrity of the bar and the judicial system," *Manoir-Electroalloys Corp. v. Amalloy Corp*, 711 F. Supp. 188, 196 (D.N.J. 1989), and ensure that trial of every case be "free from taint," *Carlyle Towers*, 944 F. Supp. at 345. However, a court must "exercise extreme caution not to act under the misguided belief that disqualification raises the standard of legal ethics and the public's respect; the opposition effect is just as likely - encouragement of vexatious tactics, which increase public cynicism about the administration of justice." *Id.* (quoting *Gould*, 738 F. Supp. at 1126).

Factors that this Court should consider in determining whether disqualification is warranted include:  (1) prejudice to Wyeth; (2) prejudice to BSC; (3) whether's Howrey's representation of Wyeth in the Lonza matter has allowed BSC access to any confidential information relevant to this case; (4) the cost -- in terms of both time and money -- for BSC to retain new counsel; (5) the complexity of the issues in the case and the time it would take new counsel to acquaint themselves with the facts and issues; (6) which party, if either, was responsible for creating the conflict. *See Carlyle Towers*, 944 F. Supp. at 348.

Also, with the goal of approaching the issue "with a keen sense of practicality," *id.*, the Court finds it relevant in this case to address the nature and degree of the actual conflict created by Howrey's concurrent representation. To this end, the Court finds the following additional factors to be relevant to the disqualification analysis:  (a) whether the two matters at issue are related in substance; (b) whether both matters are presently active; (c) whether any attorneys from the firm have been involved in both matters; (d) whether the matters are each

11

being handled from offices in different geographic locations; (e) whether the attorneys from the law firm work with different client representative for each matter; and (f) the relative time billed by the law firm to each matter.

Weighing all of the above considerations, the Court finds that the disqualification of Howrey is not warranted here.  The interest protected by RPC 1.7 is that of loyalty, and while fully appreciating the duty of loyalty Howrey owes to Wyeth arising from the representation undertaken in the Lonza matter, the Court is hard-pressed to see how this duty will be compromised under the facts of this case.  In this regard, "the critical question is whether [Howrey's] ... concurrent representation ... will materially interfere with its independent professional judgment."  *Elonex I.P. Holdings, Ltd. v. Apple Computer*, 142 F. Supp. 2d 579, 583-584 (D. Del. 2001).  Here, there is simply no evidence that Howrey's "independent professional judgement" will in any way be impaired if it is permitted to continue as counsel for BSC in this matter.  Indeed, the evidence is to the contrary:

First, the substance of the two matters are completely unrelated.  In the Lonza matter, Howrey represents Wyeth in its opposition to a European patent owned by Lonza Biologics, PLC, relating to the "purification of antibodies by applying protein A affinity chomatography and anion exchange chomatography."  BX2 at A56.[6]  The present case deals with the alleged infringement of U.S. patents involving percutaneous transluminal procedures in humans.

Second, no Howrey personnel overlap on the two matters.  The Lonza matter is being handled by Howrey attorneys based in Munich, Germany -- no United States-based Howrey

---

[6] Cites to the exhibits admitted into evidence in the hearing before Judge Robinson are referred to as "BX_" and "WX_".

attorney has ever worked on it -- while the present case is being handled by Howrey attorneys in Washington D.C.  The firm has put up an ethical screen between these personnel to ensure confidential information does not pass between them.

Third, as the matters are unrelated, Wyeth is unable to identify any confidential information accessible to Howrey in one case that could be used in the other.

Fourth, the Lonza matter has been dormant since November 2008, Declaration of Edward Han ("Han Decl.") ¶ 7, which was eight months after the Notice of Opposition was filed with the European Patent Office in March of 2008, WX5.  Moreover, since the inception of the Lonza matter, Howrey lawyers and personnel have billed less than 70 hours *in total* to the case, with all of this billing occurring in 2008.  Han Decl. ¶ 8.  While a hearing is expected to be held in the Lonza matter at some point in the future, Wyeth has advised that it plans to replace Howrey as its counsel.  *See* Declaration of Thomas Szatkowski at ¶ 2.  Therefore, to the extent Howrey expends any further time on the Lonza matter it appears that it will only be the time necessary to effect an orderly transition.  *Id.* ¶ 3.

Turning to the potential prejudice that may be suffered by each of the parties, the scale here tips against disqualification as well.  According to BSC, Howrey has served as one of BSC's primary litigation counsel in matters relating to the stent products and technology at issue in this case for more than a decade.  Han Decl. ¶ 1, 2.  Over approximately the past ten years, Howrey lawyers have billed an average of almost 14,000 hours per year on scores of different matters for BSC.  *Id.* ¶ 4.  Given Howrey's historical representation and the complex technologies at issue in this case, depriving BSC of its counsel of choice deprives BSC of

Howrey's depth of experience and expertise.  Additionally, if BSC were required to obtain new counsel, there would likely be some delay in this litigation as well as certain additional costs incurred by BSC while new counsel familiarized itself with this case.  In contrast, Wyeth has not identified any prejudice that it will suffer if Howrey is not disqualified from this matter.

With regard to which party bears responsibility for creating the conflict, the Court finds this factor to be neutral in the disqualification analysis.  As discussed above, Judge Robinson noted that Wyeth's own "obfuscatory conduct" contributed to Howrey's confusion as to which Wyeth entity it was representing in the Lonza matter.  *Boston Scientific Corp.*, 647 F. Supp. 2d at 374.  The Court agrees that Wyeth does bear some responsibility for creating the conflict and, therefore, should not necessarily benefit from that conduct.  However, "[i]t is the attorney's responsibility to avoid conflicts of interest." *Celgene Corp.*, 2008 WL 2937415 at *7 (quoting *Baldasarre v. Butler*, 132 N.J. 278, 291, 625 A.2d 458 (1993)).  Given the different ethics rules that apply across jurisdictions (national and international), when a global law firm such as Howrey undertakes to represent an entity that is part of large multi-national organization like Wyeth, counsel should take due care in identifying and confirming with the client at the outset of the representation exactly which entity is being represented.  Apparently, that was not done here by Howrey.  Because both parties contributed to creating the existing conflict, this factor weighs neither for nor against disqualification.

Finally, the Court finds that "its interest in protecting the integrity of the proceedings

14

before it and maintaining public confidence in the judicial system does not weigh in favor of disqualification." *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 584 (D. Del. 2001) (finding disqualification not warranted despite violation of RPC 1.7 because matters were unrelated, being handled out of different cities, and separated by an ethical screen). Given the remoteness of the two matters at issue (in substance and location of counsel), the lack of prejudice to Wyeth, the existence of the ethical wall, and the historical relationship between BSC and Howrey, the Court "is unable to see how the court-ordered severance of [BSC's] long-standing relationship with [Howrey] in this matter will serve the interests of justice and fairness, or how it will serve to maintain the integrity of the legal profession in the eyes of the public." *Id.* at 585. Consequently, the Court in its discretion will allow Howrey to continue as counsel for BSC in this matter.

III.    Conclusion

For the reasons above, the December 1 Letter Order is reversed. An appropriate Order accompanies this Opinion.


/s/ JOEL A. PISANO
United States District Judge