**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

WYETH and CORDIS CORPORATION,            )
                                         )
    Plaintiffs & Counterclaim Defendants )
                                         )
    vs.                                  )    Civil Action No. 08-CV-00230-JAP-TJB
                                         )
ABBOTT LABORATORIES and ABBOTT           )    Judge Joel A. Pisano
CARDIOVASCULAR SYSTEMS, INC. and         )    Magistrate Judge Tonianne J. Bongiovanni
BOSTON SCIENTIFIC CORPORATION            )
and BOSTON SCIENTIFIC SCIMED, INC.,      )
                                         )
    Defendants & Counterclaim Plaintiffs )
_____
                                         )
WYETH and CORDIS CORPORATION,            )
                                         )
    Plaintiffs & Counterclaim Defendants )
                                         )
    vs.                                  )    Civil Action No. 08- CV-1021-JAP-TJB
                                         )
MEDTRONIC, INC., MEDTRONIC AVE,          )    Judge Joel A. Pisano
INC. and ABBOTT LABORATORIES, and        )    Magistrate Judge Tonianne J. Bongiovanni
ABBOTT CARDIOVASCULAR SYSTEMS,           )
INC.,                                    )
                                         )
    Defendants & Counterclaim Plaintiffs )
_____

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE**
**DAMAGES AND STAY DISCOVERY ON DAMAGES**

Of Counsel:

David T. Pritikin
William H. Baumgartner, Jr.
Russell E. Cass
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Bindu Donovan
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Donald A. Robinson
Keith J. Miller
ROBINSON, WETTRE & MILLER LLC
One Newark Center, 19th Floor
Newark, New Jersey 07105
(973) 690-5400

Attorneys for Plaintiffs Wyeth and Cordis Corporation
Dated:  June 30, 2010

## TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................1

STATEMENT OF FACTS...................................................................................3

ARGUMENT........................................................................................................5

I.      THERE IS SUBSTANTIAL OVERLAP BETWEEN LIABILITY AND DAMAGES ISSUES IN THIS CASE. .......................................................................8

II.     SEPARATE TRIALS OF LIABILITY AND DAMAGES WILL UNDERMINE THE INTERESTS OF EXPEDITION AND JUDICIAL ECONOMY. .....................10

III.    THE BALANCE OF EQUITIES WEIGHS AGAINST BIFURCATION. ................12

IV.    DAMAGES DISCOVERY SHOULD NOT BE STAYED. ..........................15

CONCLUSION ...................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraxis Bioscience, Inc. v. Navinta LLC*,
   Case No. 07-1251 (JAP), 2008 WL 2967034 (D.N.J. July 31, 2008) ......................................7

*Brad Ragan, Inc. v. Shrader's Inc.*,
   89 F.R.D. 548 (S.D. Ohio 1981) ...........................................................................................14

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*,
   229 F.3d 1120 (Fed. Cir. 2000) .......................................................................................9, 10

*Cable Electric Products, Inc. v. Genmark, Inc.*,
   770 F.2d 1015 (Fed. Cir. 1985), *overruled on other grounds*, *Midwest Industries, Inc.*
   *v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) .........................................................9

*Caterpillar, Inc. v. Deere & Co.*,
   Case No. 96C5355, 1997 WL 17798 (N.D. Ill. Jan. 14, 1997) .........................................11, 12

*Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*,
   498 F. Supp. 2d 734 (D. Del. 2007) ......................................................................................6

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
   No. 07-178, 2008 WL 2520809 (D. Del. June 23, 2008) .......................................................14

*F&G Scrolling Mouse, LLC v. IBM Corp.*,
   190 F.R.D. 385 (M.D.N.C. 1999) ............................................................................... passim

*Georgia-Pacific v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ......................................................................................10

*HIPPV Enterprises v. Cable/Home Communication Corp.*,
   No. 91-1541-K(M), 1993 WL 186168, 26 U.S.P.Q.2d 1714 (S.D. Cal. Jan. 4, 1993) ........9, 11

*In re Huang*,
   100 F.3d 135 (Fed. Cir. 1996) ..............................................................................................10

*Intermedics, Inc. v. Cardiac Pacemakers, Inc.*,
   Case No. 4-95-716 .........................................................................................................6, 14

*Johns Hopkins Univ. v. Cellpro*,
   160 F.R.D. 30 (D. Del. 1995) .........................................................................................10, 15

*Kos Pharmaceuticals, Inc. v. Barr Labs.*,
   218 F.R.D. 387 (S.D.N.Y. 2003) ..........................................................................................11

*Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co.*,
   Case No. 03-5550 (MLC), 2007 WL 188285 (D.N.J. Jan. 22, 2007)..................................7, 14

*Mellon v. Beecham Group PLC*,
   Case No. 86-2179 (HAR), 1991 WL 16494 (D. N.J. Jan. 3, 1990).........................................11

*Ortho-McNeil v. Teva Pharms. USA*,
   Case No. 02-2794 (GEB), 2003 WL 25888720 (D.N.J. Jan. 28, 2003) ...................................7

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
   587 F. Supp. 1112 (D. Del. 1984)................................................................................................9

*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*,
   180 F.R.D. 254 (D.N.J. 1997)................................................................................................7, 11

*Real v. Bunn-O-Matic Corp.*,
   195 F.R.D. 618 (N.D. Ill. 2000).........................................................................................12, 14

*Ricoh v. Katun Corp.*,
   Case No. 03-2612(WHW), 2005 U.S. Dist. LEXIS 46493 (D.N.J. July 14, 2005)..................7

*Swofford v. B&W, Inc.*,
   34 F.R.D. 15 (S.D. Tex. 1963), *aff'd*, 336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379
   U.S. 962 (1965)...........................................................................................................................6

*THK America, Inc. v. NSK Co. Ltd.*,
   151 F.R.D. 625 (N.D. Ill. 1993)....................................................................................8, 10, 11

*Trading Technologies Int'l v. Espeed, Inc.*,
   431 F. Supp. 2d 834 (N.D. Ill. 2006) .....................................................................................5, 6

*Westvaco Corp. v. International Paper Co.*,
   Case No. 3:90CV00601, 1991 WL 398677, 23 U.S.P.Q.2d 1401 (E.D. Va. Nov. 5,
   1991) .........................................................................................................................................11

*Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*,
   707 F. Supp. 1429 (D. Del. 1989).................................................................................7, 11, 12

**STATUTES**

35 U.S.C. §§ 102 and 103 ...................................................................................................................4

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 42(b)..........................................................................................5, 12

Robert L. Harmon, *Patents and the Federal Circuit,* § 4.6(b) (8th ed. 2007)................................9

U.S. Patent No. 5,516,781..................................................................................................................3

U.S. Patent No. 5,563,146............................................................................................................3

U.S. Patent No. 5,665,728............................................................................................................3

**TABLE OF ABBREVIATIONS**

| ABBREVIATION | PARTY OR PARTIES |
|---|---|
| "Abbott" | Abbott Laboratories and Abbott Cardiovascular Systems Inc. |
| "Medtronic" | Medtronic, Inc. and Medtronic AVE, Inc. |
| "Boston Scientific" | Boston Scientific Corporation and Boston Scientific Scimed, Inc. |
| "Defendants" | Abbott, Medtronic, and Boston Scientific |
| "Plaintiffs" | Wyeth and Cordis Corporation |
| "Wyeth" | Wyeth and its predecessor, American Home Products |

| ABBREVIATION | PATENT(S) |
|---|---|
| " '781 Patent" | U.S. Patent No. 5,516,781 |
| " '146 Patent" | U.S. Patent No. 5,563,146 |
| " '728 Patent" | U.S. Patent No. 5,665,728 |
| "patents-in-suit" or "Morris patents" | The '781 Patent, '146 Patent, and '728 Patent |

## INTRODUCTION

Defendants' request to try liability and damages to separate juries, and to stay all damages discovery pending a determination of liability, risks substantially delaying the final resolution of these cases.  Plaintiffs respectfully submit that bifurcation in this instance would be wasteful, and would serve no useful purpose for at least the following reasons:

1.     There is a substantial overlap between liability and damages issues in these cases.  As Defendants point out, the technology and issues in this dispute are admittedly complex.  Any jury considering either liability or damages will need to be presented with substantial information concerning the parties, the patents-in-suit and the substantial advancements they represented over the prior art, the relevant products and their uses, and the industry in general.  There will be further overlap here because issues relating to the commercial success of the products practicing the patented inventions will be relevant both to damages and as objective evidence of non-obviousness.

2.     In light of these overlaps, having one trial to a single jury would promote the goals of expedition and judicial economy.  Once the jury has heard all of the evidence relating to liability issues, the additional evidence needed to consider damages only involves testimony from a few additional witnesses (mainly damages experts).  In contrast, because of the complexity of the issues and the inherent overlap between liability and damages in these cases, a separate trial of damages would not only require the selection of a second jury, it would also necessitate that that jury be presented with the complicated and extensive background evidence that the liability jury would already have heard.  To present this background evidence twice would not only be wasteful, it would greatly expand the total time needed to try these cases.

3.     The balance of equities strongly favors trying liability and damages to a single jury.  Defendants do not offer any reason why they would suffer any unique prejudice as a

result of a unitary trial of liability and damages.  Rather, they claim that bifurcation will reduce complexity and, presumably, the risk of jury confusion.  (*Defendants' Brief in Support of Their Motion to Bifurcate Damages and Stay Damages Discovery* (June 2, 2010) (230 Dkt. No. 162-1) ("Defs. Br.") at 1.)   While the liability issues in these cases are complex, that is exactly why the damages issues must be tried to the same jury as the liability issues.  Otherwise, the complicated background evidence must be presented twice.  Any risk of confusion can be addressed more efficiently through appropriately structuring the trial, including the use of appropriate instructions and potentially trying liability and damages in separate phases before a single jury.  In contrast to the lack of any prejudice to Defendants flowing from a unitary or phased trial, bifurcation with two juries would prejudice Plaintiffs by delaying the eventual payment of damages and perhaps (if one of the defendants suffers a business reversal) impairing the collection of any eventual judgment.   This prejudice would be substantially magnified if liability issues were allowed to be taken up on appeal, as defendants suggest,  prior to any trial on damages.

       4.    Defendants' request for an indefinite stay of damages discovery is unwarranted, particularly where, as here, the supposed basis for bifurcation is the avoidance of jury confusion.  Even if the trial of damages and liability were bifurcated, deferring all discovery with respect to damages would risk an even longer delay in the final resolution of these cases as any damages trial would have to await completion of that discovery.  Furthermore, necessary damage discovery is likely to be more difficult to obtain years from now given the movement of personnel and inevitable changes in the affected organizations and marketplace with the passage of time.

## STATEMENT OF FACTS

Plaintiffs filed a patent infringement action against Defendants Abbott and BSC alleging that they infringe U.S. Patent No. 5,516,781, U.S. Patent No. 5,563,146, and U.S. Patent No. 5,665,728 (collectively, "patents-in-suit" or "Morris patents").  (230 Dkt. No. 8.)[1]  Plaintiffs thereafter filed a separate action alleging infringement of the patents-in-suit against Medtronic and Abbott.  (1021 Dkt. No. 23.)  The two cases are subject to a common pretrial schedule.  (230 Dkt. No. 49; 1021 Dkt No. 47.)

The patents-in-suit cover the seminal discovery by Dr. Randall Morris and Dr. Clare Gregory that rapamycin drugs can be used to treat the re-closure of coronary arteries (called "restenosis") following an angioplasty procedure.[2]  Claim 1 of the '781 patent is representative of the claims asserted in these cases:

> 1.  A method of treating restenosis in a mammal resulting from said mammal undergoing a percutaneous transluminal coronary angioplasty procedure which comprises administering an antirestenosis effective amount of rapamycin to said mammal orally, parenterally, intravascularly, intranasally, intrabronchially, transdermally, rectally, or via a vascular stent impregnated with rapamycin.

(Dewitt Decl., Ex. 1 at 12:29-35.)  Rapamycin drugs have proven very successful in treating restenosis, have proven to be the most successful family of drugs for that purpose, and are by far the most commonly-used drugs on drug-eluting coronary stents in the United States today. Cordis used a rapamycin drug called "sirolimus" on its groundbreaking CYPHER® stent, the first drug-eluting stent to be tested in humans and approved for sale in the United States.

---

[1] Following Defendants' practice, Civil Action No. 08-cv-00230-JAP-TJB will be referred to as the "230" case and Civil Action No. 08-cv-1021-JAP-TJB will be referred to as the "1021" case.

[2] Copies of the patents-in-suit are attached as Exs. 1-3 of the Declaration of Amy L. Dewitt In Support of Defendants' Motion to Bifurcate Damages and Stay Discovery on Damages (June 2, 2010) (230 Dkt. No. 162-2) ("Dewitt Decl.").

Defendant Abbott's accused product, the XIENCE V® stent, uses the rapamycin drug "everolimus," as does BSC's identical private-label version of the XIENCE V®, the accused PROMUS® drug-eluting stent. Defendant Medtronic sells the ENDEAVOR® drug-eluting stent that uses the rapamycin drug "zotarolimus." The complaints allege Defendants' stents directly infringe the patents-in-suit, and that Defendants are also inducing, or contributing to, the infringement of those patents by others.

To decide liability, the jury will be presented with substantial evidence concerning the history of how physicians treated coronary artery disease. The jury will learn about the development of balloon angioplasty and the associated problems of restenosis. The introduction and use of bare metal stents will be explained, as will the development and widespread adoption of drug-eluting stents. The jury will also be presented with evidence concerning the inventions claimed in the patents-in-suit; when, how, and by whom they were developed; and how those inventions helped solve the previously intractable problem of restenosis. In addition, in connection with the consideration of infringement, the jury will be presented with detailed information concerning Defendants' accused drug-eluting stent products. Finally, the jury's determination of liability will require resolution of Defendants' asserted invalidity defenses. Among other things, Defendants have alleged that the patents-in-suit are anticipated and obvious in view of various prior art references under 35 U.S.C. §§ 102 and 103. (Defs. Br. at 5.) In response, Plaintiffs will present evidence of the differences between the claimed inventions and the prior art, as well as objective evidence of non-obviousness. This evidence will include evidence of the enormous commercial success of the products that practice the patented invention, starting with Cordis's CYPHER® sirolimus-eluting stent and then continuing with the Defendant's accused drug-eluting stent products. Plaintiffs will also present

evidence to establish a nexus between the patented inventions and the commercial success of those products. The presentation of such evidence will involve expert testimony, as well as fact testimony from Cordis employees involved in stent sales and marketing.

Resolving the damages issue will require consideration of many of the same issues and evidence. Cordis has stated that it "is entitled to at least lost profits, damages for price erosion, and/or a reasonable royalty." (*See* Dewitt Decl., Ex. 5 at 15.) (*See also id.*, Ex. 6 at 15 and Ex. 7 at 3.) To decide these damages claims, the jury will have to consider the relationship between the patented invention and the profitability of the accused product. The jury will need to understand the differences between the patented invention and the prior art as well as the benefits of the invention. If the same jury decides both liability and damages, Plaintiffs expect that little evidence beyond that offered to prove liability will be needed to complete the record as to damages, with few additional witnesses beyond the experts offered by each side. By contrast, if damages were tried to a separate jury, much of the background evidence and commercial success evidence presented in the liability trial would have to be presented again in the damages trial.

## ARGUMENT

Federal Rule of Civil Procedure 42(b) provides:

> For convenience, to avoid prejudice, or to expedite and economize,
> the court may order a separate trial of one or more separate issues,
> [or] claims…. When ordering a separate trial, the court must
> preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b). While the decision to order separate trials is left to the sound discretion of the court, bifurcation is an exceptional and extraordinary step, and the moving party has "the burden of showing that judicial economy would be served and the balance of potential prejudice weighs in favor of bifurcation." *Trading Technologies Int'l v. Espeed, Inc.*, 431 F. Supp. 2d 834,

837 (N.D. Ill. 2006) (citing *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000)).

"Merely presenting some proof which supports bifurcation is not enough." *F&G Scrolling*

*Mouse, LLC v. IBM Corp.*, 190 F.R.D. 385, 387 (M.D.N.C. 1999) (*citing Willemijn*

*Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1433-34 (D. Del.

1989)).  Rather, the basis for "bifurcation should be particularly compelling," and it should be

allowed "only in exceptional cases."  *Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*, 498

F. Supp. 2d 734, 736 (D. Del. 2007) (*quoting Kos Pharmaceuticals, Inc. v. Barr Labs.*, 218

F.R.D. 387, 390 (S.D.N.Y. 2003)).

   The rules are no different in patent cases.  While courts occasionally cite the

forty-year-old decisions in *Swofford v. B&W, Inc.*, 34 F.R.D. 15, 19-20 (S.D. Tex. 1963), *aff'd*,

336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379 U.S. 962 (1965), in support of a general rule

favoring bifurcation in patent cases – and a few judges, such as Judge Robinson in the District of

Delaware, have made it a personal practice to bifurcate liability and damages in most patent

cases – in most courts today the "[m]ere status of being a patent case does not create a

presumption or inference in favor of bifurcation and separate trials."  *F&G Scrolling Mouse,* 190

F.R.D. at 387; *Trading Technologies*, 431 F. Supp. 2d at 836-37 ("bifurcation remains the

exception, not the rule.  Patent cases are no exception to this rule.") (citations omitted);

*Intermedics, Inc. v. Cardiac Pacemakers, Inc.*, Case No. 4-95-716 (JRT/RLE), 1998 WL

35253490, *17 (D. Minn. Feb. 17, 1998) ("We do not share [defendant's] assertion that

bifurcation is the norm in patent cases, as the reported cases forcefully demonstrate that this is

not the case.") (collecting cases).

   None of the substantive decisions in this district that Defendants cite (Defs. Br. at

7) supports a general rule favoring separate trials of liability and damages issues in patent cases.

In *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254 (D.N.J. 1997), the court noted that "bifurcation issues must … be resolved upon the specific circumstances of each case" (*id.* at 256), and granted defendants' bifurcation motion in part because, unlike here, the defendant had stipulated to commercial success and faced a disproportionate discovery burden in relation to damages. *Id.* at 259. In *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co.*, Case No. 03-5550 (MLC), 2007 WL 188285 (D.N.J. Jan. 22, 2007), the court ordered a *phased trial* before the *same jury* of liability and damages issues. 2007 WL 188285 at *7. None of the other decisions Defendants cite addressed bifurcation of liability and damages issues at all. *See Abraxis Bioscience, Inc. v. Navinta LLC*, Case No. 07-1251 (JAP), 2008 WL 2967034 (D.N.J. July 31, 2008) (bifurcating trials of patent claims and antitrust counter-claims); *Ricoh v. Katun Corp.*, Case No. 03-2612(WHW), 2005 U.S. Dist. LEXIS 46493 (D.N.J. July 14, 2005) (same); *Ortho-McNeil v. Teva Pharms. USA*, Case No. 02-2794 (GEB), 2003 WL 25888720, *1 (D.N.J. Jan. 28, 2003) (bifurcating liability and willful infringement; no damages sought).

In short, as in other areas of the law, requests for bifurcation in patent cases must be evaluated on a case-by-case basis with consideration of the specific facts and issues at hand. *Willemijn Houdstermaatschaapij BV*, 707 F. Supp. at 1433 (even in patent cases, "bifurcation is a matter to be decided by the trial judge, as a result of an informed exercise of discretion, on a case-by-case basis"); *F&G Scrolling Mouse*, 190 F.R.D. at 387 (the bifurcation "decision must be made on a case-by-case basis after consideration of all of the relevant factors and the individual circumstances," citing *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978)). Here, the relevant factors weigh decisively against bifurcation.

I.      THERE IS SUBSTANTIAL OVERLAP BETWEEN LIABILITY AND DAMAGES
        ISSUES IN THIS CASE.

        Separability of the issues between liability and damages is a "threshold inquiry"

in the context of a motion for separate trials.  *F&G Scrolling*, 190 F.R.D. at 387.  Despite

Defendants' assertion that liability and damages issues are "distinct" and that there is "lack of

overlap between liability and damages in these cases" (Defs. Br. at 1, 15), the reality is that the

liability evidence and the damages evidence do overlap here.  To begin with, there is an overlap

in the essential background information that any jury considering either liability or damages will

need to have.  To even start to understand the damages issue, the damages jury will need to

understand the nature of the drug eluting stent business and the technological setting in which the

patented inventions were made.  *Why* the inventions represented an enormous advance is key to

understanding *how much* Plaintiffs were damaged by Defendants' misappropriation of those

inventions.  As the court in *THK America, Inc. v. NSK Co. Ltd.*, 151 F.R.D. 625 (N.D. Ill. 1993),

explained:

> [a] damages trial cannot be conducted in an evidentiary vacuum.
> A jury will have to be familiar with the patents at issue, the
> products, and the … industry itself.  Therefore, much of the
> evidence that can be expected to be introduced in a trial on
> damages will be duplicative of the evidence that can be expected to
> be presented in a trial on liability.  If the case were bifurcated, it
> would be necessary to revisit the testimony and demonstrative
> evidence that previously had been used to explain to the liability
> jury, *to wit*:  what [the relevant products] are, how they operate,
> how they are made, used and sold and other basic information.  It
> goes without saying that if proof overlaps substantially, the parties,
> the witnesses, and the Court would be inconvenienced by the
> presentation of the same evidence several times.

*Id.* at 630.

        In addition to the overlap in complicated background evidence, there is a further

overlap with respect to evidence of the commercial success of the patented invention and the

nexus between that success and the technological advance that the patented invention

represented.  All of this evidence will be presented as part of Plaintiffs's liability case (because it

is objective evidence that the patented inventions were not obvious).  But the same evidence is

highly relevant to damages, because it bears on how much money the patented inventions are

worth.

        In particular, in response to Defendants' obviousness defense, among other

things, Plaintiffs intend to present evidence of the commercial success of the products that

practice the patented invention, including the CYPHER® stent and all of the Defendants'

accused products.[3]  Proof of commercial success frequently involves proof of the relevant

products' sales, market shares, and profitability, and that will be the case here.  *See HIPPV*

*Enterprises v. Cable/Home Communication Corp.*, No. 91-1541-K(M), 1993 WL 186168, 26

U.S.P.Q.2d 1714, 1716-17 (S.D. Cal. Jan. 4, 1993) ("[t]o establish commercial success, plaintiffs

rely upon … sales data …, size of the market involved, market share, market share growth");

*Cable Electric Products, Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1026-27 (Fed. Cir. 1985)

("further economic evidence" required to show that sales represent "a substantial share of any

definable market or whether the profitability per unit is anything out of the ordinary"), *overruled*

*on other grounds*, *Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir.

---

[3] Contrary to the earlier statement in *Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1116-17 (D. Del. 1984), that the commercial success inquiry should focus primarily on the patentee's product, the Federal Circuit has made clear that the commercial success of the accused infringer's product must also be considered. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) (noting that "case law provides that the success of an infringing product is considered to be evidence of the commercial success of the claimed invention" and finding error in the district court's failure to consider such evidence). *See also* Robert L. Harmon, *Patents and the Federal Circuit,* § 4.6(b) (8th ed. 2007) ("[T]here is no doubt that the commercial success of the infringer's product is as relevant as that of the patentee.").

1999).  *Cf. In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) ("This court has noted in the past that evidence related solely to the number of units sold provide a very weak showing of commercial success, if any").  The commercial success inquiry likely will also involve proof of the nexus between patented inventions and the commercial success of relevant products.  *Brown & Williamson Tobacco*, 229 F.3d at 1130 ("A nexus between commercial success and the claimed features is required.")   With respect to this nexus, plaintiffs will present evidence involving the importance of the inventions to the products' commercial success.

All of this liability evidence will also bear on the determination of damages.  For example, the evidence of the sales, market share, and profitability of the PROMUS®, XIENCE®, ENDEAVOR®, and CYPHER® stents that is relevant to the commercial success inquiry will be equally essential to the determination of damages.  *See THK America*, 151 F.R.D. at 630 (listing factors relevant to damages).  Likewise, the importance of the patented invention to the commercial success of the accused products will underlie Cordis's claims to both a reasonable royalty and lost profits.  *See Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (among the factors considered in the reasonable royalty determination are (1) "the portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements" and (2) "the utility and advantages of the patented invention over old modes and devices"); *THK America*, 151 F.R.D. at 630 (factors considered in lost profit include basis for "demand for the product in question" and "the absence of an acceptable non-infringing substitute").

## II.   SEPARATE TRIALS OF LIABILITY AND DAMAGES WILL UNDERMINE THE INTERESTS OF EXPEDITION AND JUDICIAL ECONOMY.

Courts have long recognized the inherent inefficiency of conducting two trials instead of one.  *See Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995) (finding

"that it is generally much more efficient to work towards one trial and one appeal");  *Willemijn Houdstermaatschaapij BV*, 707 F. Supp. at 1435 ("if defendant were to lose on liability, the two trials would end up taking considerably more time than would have been required to reach the same outcome with a single trial"); *Kos Pharmaceuticals, Inc. v. Barr Labs., Inc.*, 218 F.R.D. 387, 390-91 (S.D.N.Y. 2003) (describing inherent inefficiencies in multiple trials in context of motion to bifurcate issues of liability and willful infringement).  And, as a result of significant evidentiary overlaps between liability and damages here, separate trials to different juries will take much longer than one trial to a single jury would take.  The desire to conserve judicial resources and reduce expense to the parties has led countless courts to deny bifurcation in circumstances such as this.[4]

        In the face of this reality, Defendants argue that if they prevail on liability, "no damages issues will need to be resolved."  (Defs. Br. at 16.)  But that argument can always be

---

[4] *See, e.g.*, *THK America*, 151 F.R.D. at 629 (denying bifurcation because, in part, "[e]vidence regarding commercial success of plaintiff's [product] will be the *same* in significant respects as the evidence relating to damages and, therefore, ought to be presented once rather than twice") (emphasis in original); *Willemijn Houdstermaatschaapij BV*, 707 F. Supp. 1434 (denying bifurcation; noting that "it is indisputable" that evidence of commercial success would be relevant to both obviousness and damages); *Westvaco Corp. v. International Paper Co.*, Case No. 3:90CV00601, 1991 WL 398677, 23 U.S.P.Q.2d 1401, 1417 (E.D. Va. Nov. 5, 1991) (denying bifurcation; noting that evidence of commercial success is relevant to the determination and "also obviously relevant to the issue of damages"); *HIPPV Enterprises*, 1993 WL 186168, 26 U.S.P.Q.2d at 1716-17 (denying bifurcation and observing that sales, market share, and nexus evidence relevant to secondary consideration of obviousness "is also relevant when computing damages"); *Caterpillar, Inc. v. Deere & Co.*, Case No. 96C5355, 1997 WL 17798, at * 3 (N.D. Ill. Jan. 14, 1997) (same); *Mellon v. Beecham Group PLC*, Case No. 86-2179 (HAR), 1991 WL 16494, at *8 (D. N.J. Jan. 3, 1990) (same).

To be sure, as Defendants point out (Defs. Br. at 15 n.6), some courts have granted separate trials even in the face of an alleged overlap between commercial success and damages.  *See, e.g.*, *Princeton*, 180 F.R.D. at 259.  Unlike the present case, however, none of those cases appears to have involved the potential for the presentation of significant overlapping evidence regarding the nexus between the patented invention and the commercial success of the products in question. Indeed, in *Princeton*, the Defendants stipulated to commercial success and agreed to produce relevant information in discovery.  *Id.*

made, yet "the overwhelming weight of authority [indicates] that separate trials should be the exception, not the rule." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 622 (N.D. Ill. 2000). At this stage of the present litigation, there is simply no basis to conclude that Defendants are likely to prevail on liability, and Defendants have not even attempted to provide one.[5] Thus, Defendants' mere assertion that they (like any defendant) *may* prevail on liability falls far short of the "strong showing" that courts require to justify bifurcation on basis of the possibility that it might obviate the need to try damages. *See Caterpillar*, 1997 WL 17798 at *3 (declining to "assume the great delay and expense" inherent in bifurcation absent "a strong showing" that a trial on damages can be avoided altogether); *Willemijn Houdstermaatschaapij BV*, 707 F. Supp. at 1435 (refusing to "gamble" that bifurcation will avoid a trial on damages).

## III.    THE BALANCE OF EQUITIES WEIGHS AGAINST BIFURCATION.

While weighing the competing equities under Rule 42(b), prejudice is the most important consideration. *Real*, 195 F.R.D. at 621. For Plaintiffs, the prejudice occasioned by separate trials to different juries is enormous. To start with, deferring damages discovery and empanelling a second jury will delay this case by months if not years. That delay, all by itself, is prejudicial enough to deny Defendants' motion. *See Willemijn Houdstermaatschaapij BV*, 707 F. Supp. at 1435 ("prejudice under the circumstances may simply amount to the unfair delay of the final disposition of that matter"); *Real*, 195 F.R.D. at 621 (noting the need to balance prejudice "caused by the considerable delay that will result if separate trials" are ordered).[6]

---

[5] Given the procedural posture of this case, the Court has no easy way to evaluate the merits of the parties' respective claims. *See F&G Scrolling*, 190 F.R.D. at 389 ("unless a court has held a preliminary injunction hearing, it likely may not be able to truly evaluate chances that the trial will end after a liability determination") (citing *Johns Hopkins Univ.,* 160 F.R.D. at 35).

[6] The fact that Cordis has sought minor adjustments to the pretrial schedule in these cases (including with respect to the present motion) in no way suggests a lack of urgency in bringing

*(Footnote continued)*

Second, if damages discovery is delayed until after completion of a liability trial, Plaintiffs'

ability to gather the necessary damages evidence could be impacted by key witnesses forgetting

relevant facts, dying, or leaving the country.  Third, the damages in this case will be very

substantial, and if the damages period is prolonged and one or more of the Defendants suffers a

financial reversal, the collectability of any eventual judgment could be jeopardized.

       Defendants, in contrast, will not be prejudiced by a unitary trial of liability and

damages.  To the contrary, because the total trial time for a unitary trial be less than for separate

trials of damages and liability, Defendants will benefit from reduced legal fees.  And because

Defendants' witnesses will only have to testify in one trial, not two, the burden on them will be

reduced as well.

       In support of its motion, Defendants emphasize the complexity of the liability

issues that the jury will be called on to decide, noting that those issues will require it "to consider

and understand highly technical information relating to the accused drug-eluting stent systems,

such as chemistry, vascular physiology, pharmacology, drug delivery, and angioplasty." (Defs.

Br. at 8-9.)[7]  All of this is certainly true, and that is exactly why bifurcation makes no sense.  If

the liability issues are presented to one jury and the damages issues are presented to another, all

of this complicated background evidence will have to be presented twice.  Under such

circumstances, "the overlap of proof suggests that considerations of convenience, continuity, and

these cases to a resolution or undermines the fact that it would be prejudiced by the potentially
very substantial delay that would result from bifurcation and a stay of damages discovery.

[7] Contrary to Defendants' claim (Defs. Br. at 4 n.2 and 9-10), the fact that the patents-in-suit are
"use" patents, and that defendants are accused of inducing or contributing to the infringement of
those patents will not significantly complicate this case.  While there may be other issues relating
to infringement for the Court or jury to resolve, there can be no doubt that Defendants intend the
accused products to be used in mammals to treat restenosis via the use of what Plaintiffs contend
is a stent impregnated with an effective amount of a rapamycin drug.  Nor is there any plausible
non-infringing use of the accused products.

*confusion avoidance* would, in fact, favor consolidated presentation of the evidence on liability and damages, rather than bifurcation." *Brad Ragan, Inc. v. Shrader's Inc.*, 89 F.R.D. 548, 550 (S.D. Ohio 1981) (emphasis added). This is especially true here because the damages aspects of the case will consume only a small part of any combined trial.[8]

In this case, the better solution to complexity and potential jury confusion is the "reasoned and considered" presentation of the essential background evidence the jury will need to decide the issues they will be called upon to decide. *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 07-178, 2008 WL 2520809, *2 (D. Del. June 23, 2008). The Court may further address potential juror confusion between liability and damages issues "with cautionary warnings, limiting instructions, special verdict forms, and other instructions to the jury." *Real*, 195 F.R.D. at 621. Indeed, although it is premature to decide now, the Court could further reduce the complexity of the issues the jury would be required to consider at any one time while avoiding the need for the repetitious presentation of the same evidence by conducting the trial before a single jury in separate liability and damages phases. *See F&G Scrolling*, 190 F.R.D. at 390 ("when the only justification for bifurcation is possibly jury confusion because of complexity of the issues and numerous experts, simultaneous discovery and back-to-back trials with the same jury may be in order"); *Intermedics*, *Inc.* 1998 WL 35253490 at *17 (recommending phased trials before a single jury); *MedPointe Healthcare*, 2007 WL 188285 at *7 (same).

---

[8] There is nothing novel about the damages issues involved in this case. *See Real*, 195 F.R.D. at 622 (lost profits and reasonable royalty determination are "regularly performed in patent litigation" and are "the type of calculations juries are required to make on a daily basis in courtrooms across the country").

**IV.     DAMAGES DISCOVERY SHOULD NOT BE STAYED.**

A stay of damages discovery is unwarranted in this case for several reasons.  First, as a general matter, there is little justification for a stay of discovery in situations, such as this, where the primary reason advanced for support of bifurcation is the need to reduce the complexity of the issues for the jury at trial.  *See F&G Scrolling*, 190 F.R.D. at 392.  Second, a stay of discovery has the potential to squander judicial resources and prolong these cases to the extent that the lack of information concerning damages impedes settlement.  *See Johns Hopkins Univ.*, 160 F.R.D. at 35 ("Discovery on damages not only assists parties in preparing for trial, it also educates each party on the other's view of the damages … Consequently, it can facilitate settlement discussions.")  Third, there is no reason to believe that damages discovery will be burdensome for Defendants, particularly given the fact that much damages-related discovery was exchanged between the parties in the two recent prior patent suits that Defendants reference.  (*See* Defs. Br. at 6.)[9]  Those discovery materials have been made part of the productions in these cases.  (230 Dkt. No. 53 at ¶ 9; 1021 Dkt. No. 49 at ¶ 9.)   As a result, much of the damages-related fact discovery in this case can be expected to involve updating the parties' prior productions.   Finally, and most significantly, a stay of damages discovery would inevitably result in an additional significant delay of any eventual trial on damages, resulting in further potential prejudice to Plaintiffs.  There is no reason to risk that prejudice in the hope that a damages trial may prove unnecessary.

---

[9] While Defendants correctly note that Judge Robinson bifurcated damages in the earlier case regarding BSC's PROMUS® stent that was pending before her (Defs. Br. at 6), she did so very near the end of discovery.  Damages were not bifurcated in the companion case pending in this court against Abbott, and the parties completed substantial damages discovery including the exchange of expert reports prior to the entry of judgment.

## CONCLUSION

Once the issues in this case are more fully developed, the Court may well decide to conduct the trial of the liability issues first and proceed to the damages phase (using the same jury) if Plaintiffs prevail on liability.  But now is not the time to decide how the trial will be structured.  For all the foregoing reasons, having one liability jury and a separate damages jury makes no sense, and Defendants' present request to employ two juries should therefore be denied.

ROBINSON, WETTRE & MILLER LLC

_____ /s/ Donald A. Robinson_____

Donald A. Robinson
Keith J. Miller
One Newark Center, 19th Floor
Newark, NJ 07105
(973) 690-5400

-and-

David T. Pritikin
William H. Baumgartner, Jr.
Russell E. Cass
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Bindu Donovan
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Dated:  June 30, 2010